Martin, J.
delivered theopinion of the court. The only question for the decision of this court *746 is, whether an alien may inherit real estate in Louisiana.
It is first necessary to enquire whether he may hold real estate.
The defendant's counsel contends he may not.
He relies on ff. 28, 5, 6, n. 2, id. 59, n. 4, to shew that aliens could not at Rome; but this shews that they could not take by will. Non ha- bet testamenti factionern activam vel passivam.
2. Henext endeavours to shew that the droit d'aubaine prevails in Spain. In this, he does not appear to have succeeded: but if he had, it would only shew that an alien may not transfer property by will or succession.
3. The Spanish statutes are next relied on to shew that the sale, gift or alienation of cities, towns, castles, lands or hereditaments, hereditamientos, to an alien is prohibited.
The plaintiff's Counsel contends, that the pro- hibition is confined to estates, to which some jurisdiction or civil or military power is annexed, and produces in favor of this position a legislative construction of these laws, which he finds in the Partidas and the Nueva Recopilacion and the Leyes de las Indias, Ordonmiento real and Autos Accordados.
Naturalization may beobtained in Spain by acquiring an inheritance, por hereditamiento- inheritance por hercditainiento *747 Partida 4, 4, 2-by the acquisition, by purchase or donation, of real property, bienes raices. Nueva Recopilacion. And foreigners are forbidden to trade to the Indies, unless they have acquired real property, of the value of four thousand ducats, by purchase or inheritance. Recopilacion de las leyes de las Indias.
Now, it is impossible to give effect to these laws, by which naturalization may be acquired by an alien, unless the construction of the for- mer laws, contended for by the plaintiff's counsel, be adopted. Is it not illusory, to say that a foreigner may obtain naturalization by acquiring real estate, if he be not permitted to make the acquisition ?
If the laws, quoted by the plaintiff's counsel, be attentively examined, the construction con- tended for will not appear a forced one. “ We declare, that we do not intend to give or grant to any king, or other foreign person, out of our kingdom, any city, town, castle, place, land or inheritance, nor any island,’’ &c. Nueva Re- copilacion. The donation is not valid to any stranger out of the realm, of any city, town or hereditament.”
"We forbid that any of our subjects or vas- sals should give, sell or exchange any city, town, castle, land or hereditament, or island, of West. *748 our kingdom, to any king, lord, or any other stranger, out of our kingdom, under pain of our displeasure." Nueva Recopilacion.
The laws, which aoffered as evidence of the legislative construction contended for, are positive. lit is further contended that, if they do not shew that the former ones are to be thus construed, these are impliedly repealed.
The legislator, authorisirig aliensto obtain naturalization, by the acquision of landed pro- perty, muss necessarily authorize such an ac- quisition, and effectually repeal the laws which forbade it. Cum quid conceditur, conceditur id per quod pervenitur ad illud.
If we are enabledto conclude that aliens can hold real estate in Spain, it remains to be inquired whether they may acquire it by inhe- ritance.
Here it is properto remark, that none, of those prohibitive laws cited, affect, except by a remote construction, the right of acquiring real estate by inheritance.
Any person may beinstituted as heir, who is not prohibited from being so. Partida 6, 3, 2.
In the fourth lawof the same title, persons, who are incapacitated from inheriting, are enumerated, and aliens are not spoken of.
Persons, who may not make a will, are enu *749 merated in Partida 6, 1, 13-aliens are not among them.
The third law of the some title provides, that peregrinos, pilgrims, may make their wills.
It would be idle to suppose, that the circumstance of a Spanish subject, going on a pilgrimage, in his own country, would require a positive law to authorize him to make a will. The inference is strong, that alien pilgrims are referred to.
The succeeding law makes it the duty of the bishop, or his vicar, to take care of the property of strangers and pilgrims, for their heirs ; to write to them, that they may come or send for such property ; and, if the heir neglects to come or send for it, it shall he employed in pious uses.
The Recopilacion de los leyes de las Indias has the following proviso: If he who died left a writing, in form of a testament, which is to be proven by witnesses, as being a stranger or peregrino, the cognizance of it belongs to the ordinary judges.
Hence we conclude, that the maxim of the Roman law, which denied to aliens testamenti factionem. activum vel passivam, does not prevail in Spain.
But the plaintiff’s counsel shews that the *750 viceroys of Spanish America and the audiences are directed, " in case persons, with sufficient vouchers, claim the estates of persons who died in the Indies, they may receive them, unless they be strangers: and that the king's subjects may not receive the estates of Strangers." Re-copilacion de las leyes de las Indias 2, 32, 44; and this is presented to us as proof that the principle prevails, at least in Spanish America.
By the 36th law of the same title, " testamentary executors, heirs and other retainers of goods of deceased persons, who, according to the will, are bound to deliver them, in whole or in part, to persons within these our kingdoms, are ordered, at the expiration of one year, to send whatever they may have collected to the casa de contratacion of Seville."
Not only aliens, but many of the Spanish subjects themselves, were excluded from the dominions of the king of Spain in America, and the property of those who, contrary to the prohibition, introduced themselves there, was liable to confiscation. On the death of any idividual in the American provinces, whose property was not claimed there, it was deemed proper to submit the rights of alien claimant, or of Spanish claimants, not resident on the spot, and even the claims of the colonists, to to *751 the estate of an alien, to a severe scrutiny in Europe. For this purpose, if the claimant resided in Spain, the estate was to be sent to casa de contratacion in Seville, where that scrutiny was to take place. But, if the deceased was an alien, then, if an alien claimed the estate, the cognizance of the claim was exclusively confined to the council of the Indies, Recopilacion de las leyes de las Indies 9, 37, 24. The colonial authorities, even the viceroys and audiences, were interdicted from interfering in such cases. We see, therefore, nothing in these statutes that affect the present case.
By the 15th article of the instructions of ernor Gayoso to the commandants, relating to the grant of lands, provides that, in case of death, he (the grantee) may leave them (the premises) to his lawful heir, if he has any resi- dent in the country; but, if he has no such heir in the country, they shall in no event go to an heir who is not in the country, unless such heir shall resolve to come and live in it. 1 Laws of the United States, 543.
This condition, directed to attend the grant of land, is a strong presumption that there did not exist, in the knowledge of the governor, any principle of law which forbade aliens from acquiring land.
*752 Nothing in the laws of Spain, or of her colonies, appears to us to exclude aliens from the inheritance of real estate.
Our own statute makes no distinction in the nature of property, in order to regulate the succession. Code Civil, 146, art. 9, 10. Nothing shews that aliens must be excluded from the acquisition of real or personal property, by will or succession, and are not capable to inherit either.
All free persons, even the minor, pupil, luna- tic and ideot, may transmit their estate, ab intes- tat, and inherit from others. Slaves alone are incapable of either. Id. 158, art. 64.
Nothing appears to us to exclude aliens from the inheritance of real property; and we think that the district judge erred in refusing to the plaintiff the real property, left by his brother.
It is, therefore, ordered, adjudged and de creed, that the judgment of the district court be annulled, avoided and reversed; and it is ordered, that Thomas Phillips to recover the whole estate, real and personal, of Archibald Phillips, deceased, his brother; and, as Tho- mas Rogers was admitted as heir, the costs be paid out of the succession.